**ROBINSON et al. v. UNITED STATES.**
No. 1406-A.

District Court, W. D. New York.
Oct. 19, 1935.

All of the beneficiaries specifically named as above indicated were living at the time of the death of the insured, and the policies were paid in full to such beneficiaries, as above indicated. Payments to Matilda Robinson, widow of the insured, aggregated $36,938.81, and to his daughters, $30,613.80, making a total sum paid of $67,552.61. Policies numbered (1), (2), and (3), above, were issued by the Massachusetts • Mutual Life Insurance Company, (4) and (5), above, by the Equitable Life Assurance Society of the United States, and (7), (8), and (9), above, by the Northwestern Mutual Life Insurance Company.

Policy numbered 40858 contained the provision that it would pay the principal sum and accumulations upon the death of John W. Robinson "to the said John W. Robinson, his executors, administrators, or assigns, sixty days after due notice and satisfactory proof, as hereinafter required, of the death of the said John W. Robinson during the continuance of this Policy"; "said sum insured being for the express benefit of Matilda Robinson, wife of the said John W. Robinson." In the application in this policy the insured specifically named Matilda Robinson, his wife, as the desired beneficiary.

In the case of policies numbered (2), (3), (4), and (5), above, the policies were payable to his wife, Matilda Robinson, if she should be living at the time of the death of the insured, otherwise to the executors, administrators, or assigns of the insured. In the case of (6), above, the policy was payable to his wife if living at the time of his death, otherwise to his surviving children, but if there were no children surviving, then to his executors, administrators, or assigns. In the case of each of the policies numbered (7), (8), and (9), above, payment was to be made to the specified beneficiary, except that, in the event that the beneficiary should prede-

Rann, Vaughan, Brown & Sturtevant, of Buffalo, N. Y. (J. Edmund Kelly, of Buffalo, N. Y., of counsel), for plaintiffs.

George L. Grobe, of Buffalo, N. Y. (Willard R. Chamberlin and Goodman A. Sarachan, both of Buffalo, N. Y., of counsel), for the United States.

RIPPEY, District Judge.

John W. Robinson, a resident of Lewiston, Niagara county, N. Y., died at Buffalo, N. Y., on June 2, 1929, leaving a last will and testament which was duly admitted to probate in the county of Niagara on June 11, 1929, on which date the plaintiffs were duly appointed as executors of his estate and qualified as such and are still acting as such.

At the time of Robinson's death, there were in force nine policies of insurance upon his life, each payable to a specific named beneficiary as follows:

| | Policy No. | Date of Issuance | Beneficiary | Relationship | Amount Paid |
|---|---|---|---|---|---|
| (1) | 40858 | May 6, 1875 | Matilda Robinson | Wife | $ 2,033.94 |
| (2) | 68553 | Feb. 25, 1890 | " " | " | 5,050.40 |
| (3) | 74806 | Apr. 13, 1891 | " " | " | 5,050.40 |
| (4) | 156793 | Feb. 21, 1890 | " " | " | } 17,644.07 |
| (5) | 156794 | Feb. 21, 1890 | " " | " | |
| (6) | 156445 | Apr. 7, 1898 | " " | " | 7,160.00 |
| (7) | 472267 | Dec. 31, 1900 | Ida E. Robinson | Daughter | 10,204.60 |
| (8) | 472268 | Dec. 31, 1900 | Hazel Robinson | " | 10,204.60 |
| (9) | 472269 | Dec. 31, 1900 | Cora M. Robinson | " | 10,204.60 |

cease the insured, the policies should be paid to the executors, administrators, or assigns of the insured.

■■■ All policies were old-line ordinary life policies. Those numbered (1) to (6), inclusive, contained no provision expressly permitting the insured to change the beneficiary. All of those policies, except No. (6), provide for cash surrender value and paid-up insurance, and prohibit assignment except on notice to the companies. Policies (1), (2), and (3) were issued under the laws of Massachusetts, policies (4) and (5) under the laws of New Jersey, and (6) under the laws of New York. Neither the contracts nor the laws of the states under which the contracts were issued authorized the insured to obtain the cash surrender value of the policies without the consent of the beneficiary. The designated beneficiary obtained a vested interest at the date of the issuance of each policy superior to rights or privileges of the insured under the contracts, and the deceased had no power to assign the policy or use the policy as collateral for his own loans so as to materially change the property right of the beneficiary in any manner, or to change the beneficiary, without her consent. Anderson v. Northwestern Mutual Life Insurance Co., 261 N. Y. 450, 185 N. E. 696; Prudential Insurance Co. v. Fidelity Union Trust Co., 102 N. J. Eq. 281, 140 A. 445; Pingrey v. National Life Insurance Co., 144 Mass. 374, 11 N. E. 562; Tyler v. Treasurer, 226 Mass. 306, 115 N. E. 300, L. R. A. 1917D, 633; Central Nat. Bank v. Hume, 128 U. S. 195, 9 S. Ct. 41, 32 L. Ed. 370; Levy's Estate v. Commissioner of Internal Revenue (C. C. A.) 65 F.(2d) 412. The fact that the insured might default in payment of premiums was not equivalent to a reserved power of revocation, since the beneficiary might herself pay the premiums. Pingrey v. National Life Ins. Co., supra. Were any of those legal incidents of ownership in or of control or dominion on the part of the insured over the policies during his lifetime present, the maturing of the policies by the death of the insured would render the proceeds taxable as a transfer taking effect at death. Chase Nat. Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397. In policies (7), (8), and (9), the insured expressly reserved the right to change the beneficiaries at any time. These were the only policies over which he reserved dominion for any purpose. As to those, no property right vested in the beneficiaries until the death of the insured. In re Hogan (C. C. A.) 194 F. 846.

The deceased left a gross estate of $850,845.56 and a net estate of $678,816.41, upon which a gross federal estate tax of $25,575.83 was assessed by the Commissioner in June, 1930. A credit of $14,805.81 was allowed for New York State estate, inheritance, legacy, and succession taxes, leaving a net tax payable of $10,770.02, which was paid. On May 27, 1933, the executors filed claim for a refund of $5,654.-85, claiming this sum as an additional credit on account of New York State estate, inheritance, legacy, or succession taxes. On July 12, 1933, the Commissioner of Internal Revenue notified the executors of a reassessment of the federal estate tax made on June 16, 1933, in which the gross tax was assessed at $27,258.47, and a credit for New York State estate, inheritance, legacy, or succession taxes, aggregating $20,460.66, was allowed. This left the net tax assessable at $6,768.32. A refund because of overassessment in the sum of $4,-061.80 was allowed, but the claim of the executors to the extent of $1,653.16 was rejected. A written notice of claim was filed by plaintiffs as required by law and as a preliminary to this suit on August 16, 1933, and final rejection of the claim was made by the Commissioner on December 7, 1933. In the certificate of overassessment the Commissioner stated:

"This overassessment is due to the allowance of additional credit for State estate tax. The amount of the overassessment has been affected by the inclusion of the tax on insurance. In accordance with the provisions of Section 802 of the Revenue Act of 1932, no interest is allowable on the amount refundable, $4,061.80, after June 6, 1932."

"In the prior determination of the estate tax liability, insurance which was disclosed in the return was excluded; however, it is the opinion of the Bureau that under the Federal decision in the case of Harry LeBaron Sampson, Executor of the will of John A. Barbour, deceased, Petitioner, v. United States of America, District of Massachusetts, rendered August 19, 1932, the insurance of $67,552.61 less $40,-000.00 exemption as provided by Section

302 (g) of the Revenue Act of 1926, should be and is herein included in the gross estate."

■ The executors assert that the Commissioner was without authority to make the reassessment on June 16, 1933. Section 310 (a) of the Revenue Act of 1926, 26 USCA § 474 (a), provides that the amount of the estate taxes must be assessed within three years after the return is filed. The original return was filed on June 2, 1930. The three-year limitation on the assessment of a tax had expired at the time of the reassessment on June 16, 1933. A claim for refund having been made by the executors, although the statute of limitations may have barred the assessment and collection of any additional sum, the Commissioner was empowered to reaudit the return and to retain payments already received, provided they did not exceed the amount which might have been properly assessed and demanded. Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293.

■■ Section 302 (g) of the Revenue Act of 1926 (26 USCA § 411 (g) provides that the value of the gross estate of the deceased shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, and wherever situated, to the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life. It is clear that there was no amount receivable by the executors as insurance under the policies above referred to, and it follows that the proceeds of the policies did not become a part of the gross estate because of payment to the executors. The Commissioner allowed a refund to the extent of the tax imposed on $40,000, but held that as to the balance of the insurance moneys, aggregating $27,552.61, the executors were not entitled to any refund. Inasmuch as the deceased irrevocably designated a bene-

ficiary in policies (1) to (6), inclusive, above, retaining no rights to dominion or control over the policies, the payments aggregating $47,113.41 constituted no part of his gross estate passing as a taxable transfer at the time of his death, and were not subject to tax. Levy's Estate v. Commissioner of Internal Revenue, supra; Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934; Industrial Trust Co. v. United States, 296 U. S. ——, 56 S. Ct. 182, 80 L. Ed. ——, decided Dec. 9, 1935, No. 213; Bingham v. United States, 296 U. S. ——, 56 S. Ct. 180, 80 L. Ed. ——.

The interest of the deceased had passed upon execution and delivery of the policies as completely from any control by the decedent as in the case of an absolute gift inter vivos when made not in contemplation of death or where the donor has retained control, possession, or enjoyment during his lifetime. Reinecke v. Northern Trust Co., supra; Chase Nat. Bank v. United States, supra; In re Fieux's Estate, 241 N. Y. 277, 149 N. E. 857.

[6] The deceased retained dominion over policies numbered (7), (8), and (9), above, and the proceeds, aggregating $30,613.80, became a part of his gross estate at the time of his death for the purpose of taxation. This item does not exceed $40,000, however, and is therefore not subject to tax. No policies of insurance other than those mentioned above as having been issued on the life of the deceased have been called to the court's attention.

It follows, therefore, that the Commissioner was in error in imposing a tax upon the proceeds of the insurance policies in question and that the plaintiffs should have the relief demanded in the complaint with interest and costs.

The foregoing may constitute the findings of fact and conclusions of law, unless the plaintiffs desire more specific findings, in which event they may be submitted for signature and, when approved, may become a part of the record in this case.

Let judgment be entered accordingly.